**Opinion filed May 19, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00359-CR
_____

## ALEJANDRO DANIEL AVILA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR43438**

## M E M O R A N D U M   O P I N I O N

The jury convicted Alejandro Daniel Avila of two counts of aggravated sexual assault of a child.[1] The jury assessed punishment for each count at confinement for twenty years and a fine of $6,500. The trial court sentenced Appellant accordingly and, after the State's motion to cumulate, ordered the sentences to run consecutively.

---

[1]*See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2015).

Appellant's sole issue on appeal is that there was insufficient evidence that Appellant committed the offenses. We affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for two counts of aggravated sexual assault of a child under the age of fourteen. The indictment alleged that Appellant intentionally and knowingly penetrated the child's sexual organ with his sexual organ and intentionally and knowingly penetrated the child's sexual organ with his finger. *See* PENAL § 22.021(a)(1)(B)(i). Appellant pleaded not guilty to both counts and proceeded to trial.

## II. *Evidence at Trial*

Appellant arrived at T.M.'s home in Pecos, where she lived with her daughter, the victim. Appellant, who lived in Midland, arrived unannounced at T.M.'s home, two days before the victim's fourteenth birthday. T.M. had seen Appellant socially a couple of times, and she trusted him and considered him to be a family friend. Appellant wanted the victim to come stay with him and his wife, Julie Avila, in Midland so that they could go eat, watch a movie, and go shopping as a present for the victim's upcoming birthday. Appellant and Julie returned the victim to Pecos the following day.

The victim testified that, while she was alone in the car with Appellant, en route to Midland, Appellant began "rubbing [her] thigh and then was holding [her] hand for a little bit." The victim spent the night at Appellant's apartment in Midland and slept on the couch. The next morning, Appellant commented on the victim sleeping in her shorts. Julie went to work, and Appellant, his young daughter, and the victim went to church. After church, Appellant and the victim watched a movie together at the apartment, as Appellant's daughter slept.

Appellant asked the victim to lie down on the couch with him. The victim said that Appellant asked her what she would do "if a dirty little man like him hit on

[her]" and that he also asked her if she "was a virgin." Appellant then kissed the victim on the lips and put his tongue in her mouth. He next put his hand inside her underwear and stuck his finger inside her vagina. After a minute, Appellant ordered the victim to change into her shorts. She refused. Appellant then removed the victim's pants and underwear and put her on the couch. He next removed his shorts, spread her legs apart, and inserted his penis into her vagina. After going "in and out" for a minute, Appellant stopped completely, told the victim that he could not "do this," and told her that she was like a "daughter to him." Appellant and the victim then got dressed. The victim testified that she was scared and that she did not want Appellant to do that to her.

Appellant, his daughter, and the victim left to pick up Julie from work. They then went to the mall where Appellant bought the victim new shoes. After the trip to the mall, Julie and Appellant returned the victim to Pecos. When the victim returned to Pecos, she did not tell her mother what had happened to her when she was in Midland.

T.M. noticed that Appellant's demeanor was different on the day Appellant and Julie returned the victim. She remembered that Appellant did not make eye contact and did not joke around as he normally did. She also thought that it was unusual when Appellant took the victim outside the house to talk to her alone before he and Julie left. Approximately three weeks later, the victim told her mother that Appellant "had raped her." T.M. recalled that the victim was sad right before the outcry and that, after the outcry, the victim cried.

Elisha McPeek, a forensic interviewer, interviewed the victim. McPeek explained delayed outcry and said that it is not uncommon for child abuse victims to wait to disclose. She testified that children will not necessarily respond like adults and that each child's response is different, whether they cry, get upset, or both. Paula Brookings, the nurse practitioner that examined the victim, conducted a head-to-toe

examination of the victim. Brookings explained that light penetration of the female genitalia would often not cause injuries.

Appellant testified on his own behalf and denied each of the victim's accusations. He denied holding the victim's hand or rubbing her leg. He also explained that his car had a manual transmission, so he had to keep his right hand on the shifter because of bad traffic. On cross-examination, the victim admitted that she did not tell anyone about Appellant rubbing her thigh or leg until just before the first day of trial. Appellant also denied making the comment about the victim's shorts. Appellant maintained that he fell asleep after they returned home from church and remained asleep until around 4:45 p.m., when they left to pick up Julie. Appellant also testified that the victim and her mother had a troubled relationship.

Julie testified that the victim and Appellant picked her up around 5:00 p.m. and that the victim was not moody, but was happy and smiling. She explained that the victim was talkative and that the victim did not want to go home; the victim wanted to stay with Appellant and Julie. When they returned to Pecos that night, Julie noticed that, when they discussed that the victim might move in with Appellant, the victim "got happy. She hugged me and gave me a kiss on the cheek, hugged my husband, gave him a kiss." Julie observed that the victim only appeared to be sad when they were taking her home.

### III. *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

4

As the trier of fact, the trial court is the sole judge of the weight and credibility of the witnesses and may believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Polk v. State*, 337 S.W.3d 286, 289 (Tex. App.—Eastland 2010, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894.

IV. *Analysis*

The State had to prove that the victim was under fourteen years of age and that Appellant intentionally or knowingly (1) caused the penetration of the victim's sexual organ by his finger and (2) caused the penetration of the victim's sexual organ by his sexual organ. *See* PENAL § 22.021(a)(1)(B)(i), (a)(2)(B). The testimony of a child victim does not require corroboration. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2015). Texas law does not require additional physical, medical, or other evidence to corroborate the victim's testimony. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *see* CRIM. PROC. art. 38.07(a). The uncorroborated testimony of the victim, to each element of the charge, can be sufficient to support a conviction. *See Garcia*, 563 S.W.2d at 928; *Van Houten v. State*, No. 11-07-00265-CR, 2009 WL 481883, at *2 (Tex. App.—Eastland Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication).

The victim, who was thirteen years old at the time of the offenses, testified that Appellant asked her to lie down on the couch with him. The victim said that Appellant asked her what she would do "if a dirty little man like him hit on [her]" and also asked if she "was a virgin." Appellant then kissed her on the lips and put his tongue in her mouth. Appellant then put his hand inside the victim's underwear and inserted his finger inside her vagina. One may infer Appellant's knowledge or intent from the victim's testimony that he put his hand inside her underwear and

5

penetrated her vagina with his finger. Intent may also be inferred from Appellant's removal of both his and her clothing. The victim testified that, after Appellant had penetrated her vagina with his finger, Appellant put his penis into her vagina. After going "in and out" for a minute, he stopped completely and told her that he could not "do this" because she was like a daughter to him.

Appellant testified on his own behalf and denied the sexual contact with the victim and the penetration of her vagina with his finger or penis. Appellant maintained that he fell asleep after returning home from church and remained asleep until it was time to pick up Julie. The victim testified that Appellant wore "baggy shorts," but Appellant testified that he did not wear boxers. Appellant's trial counsel argued that the victim lied because she said that Appellant wore shorts. Julie also testified that the victim was happy the entire time at the mall and that her demeanor only changed when they told her it was time to return home. We presume that the trier of fact resolved conflicting testimony in favor of the verdict. After a review of the record, we hold that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Appellant committed both counts of aggravated sexual assault of a child. We overrule Appellant's sole issue on appeal.

## V. *This Court's Ruling*

We affirm the judgments of the trial court.

MIKE WILLSON

May 19, 2016                                                                                    JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.